UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

PHILADELPHIA INDEMNITY INSURANCE
COMPANY,

                             Plaintiff,                  16-cv-280 T

                        v.                      **DECISION
                                                     AND ORDER**

CENTRAL TERMINAL RESTORATION
CORPORATION, WILLIAM SHEEHAN, MARCY
A. SHEEHAN, and MICHAEL A. SERRANO,

                           Defendants.

_____

## INTRODUCTION

      Plaintiff Philadelphia Indemnity Insurance Company
("plaintiff" or "PIIC") seeks a declaratory judgment regarding its
duty to defend and indemnify defendant Central Terminal Restoration
Corporation ("CTRC") in lawsuits commenced by defendants William
and Marcy A. Sheehan ("the Sheehans") and Michael A. Serrano
("Mr. Serrano").  Specifically, PIIC asks the Court to determine
that its obligation to defend and indemnify CTRC exists only under
a liquor liability coverage in CTRC's primary insurance policy, and
not under the commercial general liability coverage part of the
primary policy or under an excess policy.

      Currently pending before the Court are four motions for
summary judgment, all of which were filed on November 16, 2016:
Mr. Serrano's motion for summary judgment (Docket No. 32); the
Sheehans' motion for summary judgment (Docket No. 33); CTRC's
motion for summary judgment (Docket No. 34); and plaintiff's motion
for summary judgment (Docket No. 35).  For the reasons set forth
below, the three motions for summary judgment filed by defendants

are granted and plaintiff's motion for summary judgment is denied. Judgment shall be entered in favor of defendants and the case is closed.

## BACKGROUND

The following facts are taken from the respective statements of fact, affidavits, and exhibits submitted by plaintiff and defendants.

CTRC is a not-for-profit corporation formed for the purpose of stabilizing and finding a reuse for the Central Terminal Railway Station located in Buffalo, New York. CTRC held a Dyngus Day fund-raising event on April 1, 2013, at which alcohol was served and for which it obtained a temporary liquor license. The Dyngus Day fund-raising event ultimately resulted in the filing of two lawsuits against CTRC, one by Mr. Serrano (the "Serrano Lawsuit") and one by the Sheehans (the "Sheehan Lawsuit"). Both the Serrano Lawsuit and the Sheehan Lawsuit allege that Thomas A. Gilray, Jr. ("Mr. Gilray") was served alcohol at the Dyngus Day fund-raising event despite being visibly intoxicated or impaired by alcohol and that Mr. Gilray subsequently injured Mr. Serrano and Mr. Sheehan while operating an automobile.

PIIC issued policy number PHPK99321 (the "Primary Policy") to CTRC for the policy period March 20, 2013 to March 20, 2015. The Primary Policy contains a commercial general liability ("CGL") coverage part with a $2,000,000 limit for each occurrence and an aggregate limit of $4,000,000. The Primary Policy includes both a fund-raising events endorsement, and a liquor liability coverage

part with a $1,000,000 "common cause" limit and a $1,000,000 aggregate limit.  PIIC also issued policy number PHUB415091 (the "Excess Policy") to CTRC for the policy period March 20, 2013 to March 20, 2014.  The Excess Policy has a limit of $1,000,000 for each occurrence and a $1,000,000 aggregate limit.

Following filing of the Serrano and Sheehan Lawsuits, CTRC provided timely notice of the claims to PIIC, and PIIC has been providing CTRC with a defense to both lawsuits since 2013.  On January 20, 2016, PIIC sent a letter to Michael Appelbaum, the attorney representing CTRC in connection with the Serrano and Sheehan Lawsuits, seeking to "explain the position of [PIIC}" with respect to CTRC's coverage.  The January 20, 2016 letter states that PIIC is providing coverage only under the liquor liability coverage part of the Primary Policy, and not under the CGL coverage part or under the Excess Policy.  PIIC subsequently commenced the instant action, seeking a declaration that its obligation to defend and indemnify CTRC exists only under the liquor liability coverage part to the Primary Policy.

## DISCUSSION

### I.   Standard of Review

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, the Court will grant summary judgment if the moving party demonstrates that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  When considering a motion for summary judgment, all genuinely disputed facts must be resolved in favor of the party against whom

summary judgment is sought. *See Tolan v. Cotton*, 134 S.Ct. 1861, 1863 (2014). If, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party, a grant of summary judgment is appropriate. *See Scott v. Harris*, 550 U.S. 372, 380 (2007), citing *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986).

## II. <u>The Competing Motions for Summary Judgment</u>

As noted above, there are four motions for summary judgment currently pending before the Court. Plaintiff has moved for summary judgment, arguing that no coverage exists under either the CGL coverage part of the Primary Policy or under the Excess Policy because the Sheehan and Serrano Lawsuits allege intentional acts on the part of CTRC. Mr. Serrano, the Sheehans, and CTRC have each separately moved for summary judgment, arguing that coverage exists under the plain language of both the CGL coverage part of the Primary Policy and under the Excess Policy. Because the arguments set forth by Mr. Serrano and the Sheehans are virtually identical, the Court considers them as a whole.

## III. <u>The Primary Policy Provides Coverage for Alleged Injuries Resulting from an Occurrence</u>

Under New York law, which the parties agree governs this case, "[t]he initial interpretation of a contract is a matter of law for the courts to decide." *Int'l Bus. Machines Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 144 (2d Cir. 2004) (quotation omitted). With respect to insurance contracts, "an insurer's duty to defend

claims made against its policyholder is ordinarily ascertained by comparing the allegations of a complaint with the wording of the insurance contract." *Id*. Moreover, "[a]ny ambiguity as to the insurer's duty to defend is resolved in favor of the insured." *Id*.

In this case, the CGL coverage part of the Primary Policy provides coverage for "bodily injury" caused by an "occurrence." An "occurrence" is defined as including "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Docket No. 39-2 at 46. PIIC argues that it is entitled to judgment in its favor because the Sheehan and Serrano Lawsuits involve claims against CTRC for violation of the Dram Shop Act, New York General Obligations Law § 11-101, and violation of the Dram Shop Act is not an "occurrence." Rather, plaintiff argues, violation of the Dram Shop Act is intentional conduct, and therefore cannot be considered an accident.

Plaintiff's argument was expressly rejected by the Appellate Division, Second Department, in *Markevics v. Liberty Mut. Ins. Co.*, 278 A.D.2d 285 (2d Dep't 2000). In *Markevics*, plaintiff sought a declaration that the defendant insurance company was obligated to defend and indemnify its insured in connection with a lawsuit involving the furnishing of alcohol to an individual who later caused an automobile accident. As in this case, the insurance company contended that the policy at issue did not provide coverage for the lawsuit because the claims therein "[arose] as a result of [the insured's] alleged 'non-accidental' action of serving alcohol to the driver of the car in which the plaintiff was injured." *Id.*

at 289(Santucci, J., dissenting).  The Appellate Division rejected that argument, holding that it was "beyond question that a claim was made against [the insured] for damages because of bodily injury caused by an occurrence."  *Id*. at 287.

The Court agrees with the holding in *Markevics.*  It is well-established under New York law that "[in] deciding whether a loss is the result of an accident, it must be determined, from the point of view of the insured, whether the loss was unexpected, unusual and unforeseen."  *Allegany Co-op. Ins. Co. v. Kohorst*, 254 A.D.2d 744, 744(4th Dep't 1998).  Moreover, "[a]ccidental results can flow from intentional acts.  The damage in question may be unintended even though the original act or acts leading to the damage were intentional."  *Id*.  So, for example, the court in *Kohorst* found that injuries resulting from the deliberate setting of a fire were still the result of an "occurrence."  *Id*.

Here, no one has argued, and nothing in the record would support the conclusion, that CTRC intended the alleged injuries to Mssrs. Sheehan and Serrano.  Instead, they were the result of a series of unforseen automobile accidents.  Under well-established New York law, PIIC's argument that the Sheehan and Serrano Lawsuits do not involve claims for bodily injuries caused by an occurrence must fail.

### A.    The Fund-raising Endorsement Establishes Coverage

In connection with the Primary Policy, CTRC purchased a specific "Fund Raising Event Endorsement" (the "Fund-raising Endorsement") that modifies the coverage therein.  In particular,

the Fund-raising Endorsement provides that coverage under the CGL coverage part of the Primary Policy is modified to include all "bodily injury" arising out of certain fund-raising events. *See* Docket No. 39-2 at 73. The Dyngus Day fund-raising event held on April 1, 2013, is specifically listed as a covered fund-raising event in the Fund-raising Endorsment. *Id.*

Under New York law, when an endorsement uses the phrase "arising out," courts interpret this language to mean "originating from, incident to, or having connection with." *Regal Const. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 15 N.Y.3d 34, 38(2010) (quotation omitted); *see also Liberty Mut. Fire Ins. Co. v. E.E. Cruz & Co.*, 475 F. Supp. 2d 400, 409 (S.D.N.Y. 2007) ("In the insurance context, courts in New York have deemed the words 'arising out of' to be broad, general, comprehensive terms ordinarily understood to mean originating from, incident to, or having connection with the subject of the exclusion.") (quotation omitted). To establish coverage, all that is required is "some causal relationship between the injury and the risk for which coverage is provided." *Id.* (quotation omitted).

Here, the Sheehan and Serrano Lawsuits indisputably involve claims of bodily injury arising out of the Dyngus Day fund-raising event. The plain language of the Fund-raising Endorsement therefore establishes coverage for these claims.

B. **The Liquor Liability Exclusion does not Apply**

The CGL coverage part of the Primary Policy contains an exclusion for "any bodily injury resulting from (1) Causing or

contributing to the intoxication of any person; (2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or (3) Any statute, ordinance or regulation relating to sale, gift, distribution or use of alcoholic beverages." *See* Docket No. 39-2 at 34. However, the Primary Policy also states that "[t]his [liquor liability] exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages." *Id.*

The liquor liability exclusion contained in the Primary Policy does not apply to CTRC by its own terms, because CTRC is not in the business of manufacturing, selling, serving, or furnishing alcoholic beverages. New York law supports this conclusion. In interpreting a similar liquor liability exclusion, the Appellate Division, Second Department explained that it was "not intended to apply to casual, nonrecurring situations involving the incidental consumption of alcohol." *Staten Island Molesi Soc. Club, Inc. v. Nautilus Ins. Co.*, 39 A.D.3d 843, 844 (2d Dep't 2007); *see also Schenectady Cty. v. Travelers Ins. Co.*, 48 A.D.2d 299, 301 (3d Dep't 1975). Plaintiff concedes this point, stating in its response to defendants' motion for summary judgment that "it appears that defendants are correct, the Liquor Liability exclusion does not apply to CTRC because it is not in the 'business' of selling alcohol." Docket No. 42-4 at 10.

Defendants have also argued in the alternative that the liquor liability exclusion does not apply because plaintiff failed to

timely disclaim coverage thereunder.  In light of plaintiff's acknowledgment that the liquor liability exclusion does not apply in this matter, the Court need not reach this issue.

In light of the foregoing discussion, the Court holds that defendants have demonstrated their entitlement to judgment as a matter of law that the claims set forth in the Serrano and Sheehan Lawsuits are covered under the CGL coverage part of the Primary Policy.  Pursuant to the plain language of the Fund-raising Endorsement, claims for bodily injury arising out of the Dyngus Day fund-raising event are covered by the CGL coverage part of the Primary Policy.  Plaintiff concedes that the liquor liability exclusion does not apply to CTRC.  Moreover, plaintiff's argument that no coverage exists because a violation of the Dram Shop Act is an intentional act is foreclosed by well-established New York law.

## IV.  There is Coverage under the Excess Policy

Like the CGL coverage part of the Primary Policy, the Excess Policy covers bodily injuries resulting from an occurrence. Plaintiff also contends that no coverage exists under the Excess Policy because it applies only where there has been an "occurrence."  As discussed in detail above, the Court rejects plaintiff's argument that a violation of the Dram Shop Act cannot result in an occurrence, as defined in both the Primary Policy and the Excess Policy.  As a result, defendants are also entitled to judgment in their favor with respect to the issue of coverage under the Excess Policy.

## **CONCLUSION**

For the reasons set forth above, the Court grants defendants' motions for summary judgment (Docket Nos. 32, 33, 34) and denies plaintiff's motion for summary judgment(Docket No. 35). The Clerk of the Court is instructed to enter judgment in favor of defendants and to close the case.

**ALL OF THE ABOVE IS SO ORDERED.**

S/ Michael A. Telesca

MICHAEL A. TELESCA
United States District Judge

DATED:     Rochester, New York
           May 5, 2017